**No. 59993.**—Richter Bros., Inc. *v.* United States, protest 251119–K (New York).

WILSON, Judge: The protest now under consideration covers two entries on merchandise from Germany. That part of the importation which is the subject of entry No. 838693 is covered by the following stipulation between the parties:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the merchandise marked "A" and checked JM (Examiner's Initials) by Examiner Jacob Moskowitz (Examiner's Name) on the invoices covered by the protest enumerated above, assessed with duty at the rate of 30 per centum ad valorem under the provisions of Paragraph 718 (a), Tariff Act of 1930, consists of herring fillets in sauce, packed in air-tight containers weighing with their contents not over 15 pounds each, not packed in oil or in oil and other substances and not herring smoked or kippered or in tomato sauce in immediate containers weighing with their contents over 1 pound each.

The merchandise in question in entry No. 838693 is claimed dutiable at the rate of 6¼ per centum ad valorem under paragraph 718 (b) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by Presidential proclamation, T. D.

52782, as herring (not smoked or kippered or in tomato sauce) and not packed in oil or in oil and other substances.

The second part of the importation, covered by entry No. 809306, is described on the invoice as "Friedherrings." This merchandise was classified by the collector under paragraph 718 (a) of the Tariff Act of 1930 as "Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances" and assessed with duty at 30 per centum ad valorem. Plaintiff claims that the merchandise in question is properly dutiable under the provisions of paragraph 718 (b) of the said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by Presidential proclamation, T. D. 52782, at the rate of 6¼ per centum ad valorem.

Paragraph 718 (b) of the Tariff Act of 1930, as modified, *supra;* reads as follows:

[718 (b)] Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not over 15 pounds each (except fish packed in oil or in oil and other substances):

\*  \*  \*  \*  \*  \*  \*

 Herring (except herring smoked or kippered or in tomato sauce, in immediate containers weighing with their contents over 1 pound each) _____ 6¼% ad val.

The only question before the court, as stated by counsel for the importer at the trial, is "whether or not the fish is packed in oil or in oil and other substances." (R. 3.)

The only evidence introduced was the deposition of one Klaus Moeller of Hamburg, Germany, manager of the firm which exported the fish making up the import under consideration. Mr. Moeller outlined the processes by which the herring constituting the imported merchandise were prepared and packed, as follows:

The raw material is fresh herring; head and entrails are removed from the fish and then the herring is cleaned, covered with wheat meal, put on sieves, and then fried in a pan. The frying fat consists of 50% herring oil and 50% tallow. After frying, the herring on the sieves is allowed to cool and the fat drains off. After cooling the herring is packed into tins. These tins are filled up with a brine of wine/vinegar. Such brine consists of: wine/vinegar, water, sugar, and salt. Finally the tins are closed.

He further testified that the fish, when first received by his firm, consisted of fresh herring, slightly salted, containing from 10 to 20 per centum natural oil; that the oil used in frying or cooking the fish was necessary for that process; and that, after the fish had been cooked, as much of the oil as possible was drained off. The witness then testified further as follows:

21. Q. After draining is the fish then fully prepared?—A. Yes.

22. Q. Up until this point, have all the processes to which the fish has been subjected processes of preparation, as distinct from packing?—A. Yes.

23. Q. Is the fish then ready to be packed?—A. Yes.

24. Q. Is the fish then placed in the tin?—A. Yes.

\*  \*  \*  \*  \*  \*  \*

26. Q. \* \* \* please state whether or not there is any oil added to the contents of the tin, either as such or as an ingredient of any of the material so added?—A. The vinegar brine contains no oil, and no oil is added to the contents of the tin.

27. Q. Is there any oil as such used at any time in the packing of the fish?—A. No oil is used.

Clearly, some of the answers given by the witness contain conclusions which this court has the responsibility of reaching. Obviously, therefore, inasmuch as

the imported fish were admittedly fried in fat or oil before they were packed in tins or cans, we cannot accept as final the witness' answer that no oil was used in packing the fish, that being the ultimate point which must be determined in the decision of this matter.

From the record, it appears that whatever oil is contained in the cans in which the herring under consideration are packed consists of the natural oils of the fish, plus any residue from the herring oil and tallow in which the fish were fried at the time of packing. For some reason, neither the Government nor the importer opened a sample of the merchandise in question for the purpose of analyzing the contents, as apparently was done in the cases of *Strohmeyer & Arpe Co. v. United States*, 5 Ct. Cust. Appls. 527, T. D. 35175, and *International Forwarding Co. v. United States*, 52 Treas. Dec. 567, Abstract 3801, to which our attention has been directed by counsel for the defendant in its brief. In the latter case, the court states directly:

A sample of the merchandise was analyzed and was found to contain 1.2 per cent of oil, which is about 5 per cent of the liquid sauce, vinegar, etc.

In the *Strohmeyer* case, *supra*, there is no direct statement to the effect that the merchandise was opened and analyzed, but, from the facts as stated by the court, it must be implied that the substance in which the fish were packed was analyzed. The court therein stated as follows:

The evidence discloses that the fish are prepared by first boiling in oil, when they are put in baskets of wire netting where the oil is allowed to drain off. It would appear from the results attained that the oil is not entirely eliminated from the fish when tomato sauce is added and the fish placed in tin cans and sealed. The sauce is principally tomato sauce, but as found by the board it also contains oil visible to the eye. The evidence of the Government chemist shows that the sauce contained 5.7 per cent oil, the major portion of which probably consists of vegetable oil.

Obviously, in the *Strohmeyer* case, *supra*, the United States chemist could not have analyzed the sauce without opening a can and examining the contents. In the instant case, we have no way of determining the composition of the so-called "brine of wine/vinegar," except from the deposition of Mr. Moeller, hereinbefore referred to. His testimony clearly indicates that whatever oil may be found in the brine of wine/vinegar, in which the fish are packed, came from the natural oil in the fish, plus the residue of the herring oil and tallow in which the fish were fried. We cannot see any logic in the provisions of subparagraphs 718 (a) and 718 (b), if it be held that the natural oil of the fish should be considered in determining whether the herring is packed in oil or in oil and other substances, for it clearly appears that a certain amount of natural oil is contained in all herring. This case, therefore, turns upon the simple proposition as to whether any of the oil in which the herring in question were fried remained in the fish at the time they were sealed in the cans, and, if it did, whether packing the herring in the sealed containers with some oil remaining in them from the frying process constituted fish packed in oil or really in oil and other substances, since, clearly, the packing sauce used was made up principally of so-called brine of wine/vinegar.

In the *Strohmeyer* case, *supra*, the court, page 528, stated as follows:

The importers contend that the goods are dutiable under the second provision of the paragraph for all other fish except shellfish in tin packages at 15 per cent ad valorem, the contention being that the fish are not packed in oil and other substances in the sense that brings them within the provisions of the first clause of the paragraph. The board held, however, that it is immaterial how the vegetable oil came present in the tins; that if, as a matter of fact, the substance in which the fish were found in the tins as packed consisted of oil and other substances, this is sufficient to bring it within the first provision of the paragraph.

We think this is the correct interpretation of the statute; that the purpose was to provide for an additional duty in case oil alone or oil with other substances was used in the preparation of the fish in packing; and that the provision is not aimed at the method of application, but is intended to reach any case in which oil is part of the substance in which the fish is found packed when offered for importation.

There is nothing in the present record to indicate how much oil was absorbed by the herring when they were fried, nor what amount of oil remained in the fish when they were drained after frying. There is no evidence whatever in the record on these points, except that found in Mr. Moeller's deposition where he answered "Yes" to the interrogatory, "Is as much of the oil as possible drained off?" However, that does not throw any light on the question of what portion of the oil it is possible to drain off.

Since there is definitely a presumption in favor of the correctness of the collector's classification, which presumption must be overcome by the importer, we are of the opinion that the record in this case fails to overcome the presumption of correctness. We are unable to conclude that everything that was done to the fish prior to the time they were placed in containers constituted preparation, as distinguished from packing. If that were true, fish could be saturated with oil through a frying process, then placed in containers while thus saturated, upon the theory that the oil was part of the preparation and not part of the packing process. Both the *Strohmeyer* and the *International Forwarding Co.* cases, *supra*, indicate that oil retained from the process of preparation, and included in the contents of the container in which the fish are packed, constitutes part of the substance in which the fish are packed and sealed.

For the reasons aforesaid, the protest claim as to the merchandise covered by entry No. 809306 is overruled. Judgment will be entered accordingly.

In accordance with the stipulation of the parties, *supra*, the protest as to the merchandise marked "A" in entry No. 838693 is sustained. Accordingly, we hold the items in question dutiable under paragraph 718 (b) of the Tariff Act of 1930, as modified, *supra*, at the rate of 6¼ per centum ad valorem, as claimed. Judgment will be rendered accordingly.